267 So.2d 65 (1972)
Cornelius Lewis CHANEY, Appellant,
v.
STATE of Florida, Appellee.
No. 41230.
Supreme Court of Florida.
September 20, 1972.
*66 William C. Owen, Sp. Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
PER CURIAM.
This is an appeal from a judgment of conviction in a rape case in which the verdict of the jury contained no recommendation of mercy and the Appellant, Cornelius Lewis Chaney, was sentenced to death.
The Appellant raises three points for our consideration as follows:
"Point I. Whether appellant was deprived of constitutional requirements of due process when prosecutrix identified Appellant in courtroom as her assailant and where record shows that, prior to trial, prosecutrix was permitted to view *67 a suggestive one man photographic display of Appellant, followed by a lineup view and identification conducted in the absence of counsel for the Appellant.
"Point II. Whether the remarks and conduct of the prosecutrix in the presence of the jury during court adjournment were sufficient to warrant declaration of mistrial or, in the alternative, a court directed inquiry to ascertain the effect of said remarks and conduct of the jury.
"Point III. Whether Eighth Amendment's prohibition against cruel and unusual punishment precludes punishment by death for crime of rape when victim's life is not taken or when victim is not caused substantial bodily harm."
From the transcript of the evidence it appears: Patricia Hall (the prosecutrix herein), aged 14, went from her home on her bicycle in Panama City, Florida on Sunday, November 16, 1969, about 8:30 P.M. to go to a store a block away to buy milk and candy. When she did not return home from the store promptly, a search was begun by Patricia's father. City and county police authorities were summoned. Her bicycle was found abandoned a short distance from Patricia's home. Nearby was discovered a paper sack containing a half gallon of milk. Later, a pair of slacks identified as those worn by Patricia were found in the same vicinity.
At the trial she testified that when she was returning home from the store she was grabbed by a man whom she identified in court as the Appellant. She said that her assailant dragged her into an abandoned shack on the vacant lot near the store and there forced her to remove her slacks and underwear. When Patricia's father began calling for her shortly after she failed to return, Patricia said her assailant threatened to kill her if she did not keep quiet and forced her to leave the shack and made her accompany him to an abandoned trailer some distance from the store. There, she said he forced her to have sexual intercourse with him several times, including acts of fellatio and cunnilingus. She also testified that her assailant choked her, slapped her, and cut her hair with a razor blade.
On Monday after more sexual episodes extending into the afternoon, the assailant bound the prosecutrix and left the trailer stating he was going to change clothes. Shortly thereafter prosecutrix was able to free herself and flee from the trailer and obtained assistance in summoning the police.
After her in-court identification of Appellant at trial as her assailant, it developed on cross-examination of prosecutrix concerning her in-court identification that in attempting to describe her assailant to a deputy sheriff late Monday afternoon after she escaped she told him that her assailant disclosed to her in the trailer he had been recently jailed for the rape of another girl. After this revelation to the authorities, a picture of Appellant was shown to prosecutrix and thereupon she identified him as her assailant. The next morning (Tuesday) the prosecutrix went to the jail and identified the Appellant from a lineup. At that time no attorney had been appointed to represent Appellant, who is an indigent. Shortly thereafter Appellant was indicted and charged with the crime of rape.
Because the foregoing cross-examination testimony of prosecutrix revealed that her recollection of the identity of her assailant had been aided by the single photograph of Appellant shown her by the deputy sheriff, and because Appellant was identified by prosecutrix in a lineup at the time when no attorney had been appointed to represent him, an indigent, Appellant poses Point I for consideration in his appeal.
In support of the affirmative of Point I Appellant relies upon the rationale of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 182 L.Ed. 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 1178 (1967).
*68 It is our duty to apply the rationales of those holdings to the degree applicable in the particular case. In passing, we make note that our earlier suggestion in the case of Perkins v. State, Fla. 1969, 228 So.2d 382, that the rationale of the two cases, Wade and Gilbert, applied only to post-indictment lineups is correct.
The Supreme Court of the United States in considering the subject in Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, reaffirmed the Wade and Gilbert holdings, but said:
"However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it ..."
Later, in Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court of the United States reiterated that:
"... improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals ... Even if the police subsequently follow the most correct photographic identification procedures and show him [the witness] the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."
Nonetheless, the Supreme Court adds:
"We hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification ..." (p. 383, 384, 88 S.Ct. 971.)
Most recently, however, the Supreme Court of the United States has held in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411,
"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the `criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See Powell v. Alabama, 287 U.S. 45, 66-71, 53 S.Ct. 55, 63, 77 L.Ed. 158; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (Douglas, J., concurring).
"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after Wade and Gilbert were decided, the Court explained the rule of those decisions as follows: `The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the prosecution," and that a post-indictment [emphasis ours] lineup is such a "critical stage."' (Emphasis supplied.) *69 Simmons v. United States, 390 U.S. 377, 382-383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247. We decline to depart from that rationale today by imposing a per se exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever."
We fully acknowledge our duty to respect and follow these controlling principles announced by the Supreme Court of the United States in the cases cited above. Furthermore, we recommend that police officers of the state carefully heed the identification cautions requisite to afford due process enunciated by our nation's highest court.
Within the latitude of the particular facts of this case and taking them all into consideration, as we may do under the guidelines of the Supreme Court of the United States, it does not appear to us that the identification procedures employed herein were fatally tainted to the point of depriving Appellant of due process of law.
It is true that a single photograph of Appellant was shown prosecutrix by the sheriff's deputy, because she told him Appellant had revealed to her he had been jailed for raping another girl. Pursuant to this revelation, it is logical that the police would show prosecutrix a photograph of a suspect in another rape case who had been jailed as a lead in identifying and arresting the person suspected of committing the crime of rape upon the prosecutrix. Under these circumstances, it was not an abuse of due process rights to use the single photograph as a clue or lead in apprehending the rapist of prosecutrix. In fact, it would be unreasonable to preclude the use of such a photograph for this pre-arrest purpose.
Moreover, the fact that prosecutrix had opportunity to see her assailant over a period of several hours, including daylight of the day succeeding his original attack upon her, is such an overwhelming circumstance of independent origin as to discount the suggestion that only through means of the photograph prosecutrix was able to identify Appellant. Corroborating latent fingerprints extracted from furnishings and items in the trailer where the rape occurred were identified as belonging to Appellant.
We conclude that the totality of the particular circumstances of this case does not disclose that prosecutrix's identification of Appellant was fatally tainted to the point of denial of his rights of due process.
As to Point II, it appears that after the prosecutrix had concluded her testimony of direct examination, the court adjourned until the following morning. As the jury was moving along a breezeway corridor, the prosecutrix who had also exited the courtroom, became somewhat hysterical, exclaiming that she could not look at the Appellant again. The prosecutrix's aunt then approached Appellant's counsel and criticized him for defending Appellant. This scene was observable by the jury.
The trial judge disallowed a motion for mistrial based on the described events. We think this disallowance was within the discretion of the trial judge and that it lay within his province to conclude the outbursts were not prejudicial to the point of ordering a mistrial.
Point III has been rendered moot by the decision of the Supreme Court of the United States in Furman v. Georgia, 1972, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.
Because that decision has invalidated Florida's capital punishment under Section 775.082(1), Florida Statutes, F.S.A., we remand this cause to the Circuit Court of Bay County and direct that court to resentence the Appellant in the light of Furman v. Georgia, supra, and Donaldson v. Sack, *70 Fla., 265 So.2d 499, and Anderson v. State of Florida, Fla., 267 So.2d 8.
It is so ordered.
ROBERTS, C.J., ERVIN, ADKINS, BOYD, McCAIN and DEKLE, JJ., and MASON, Circuit Judge, concur.