313 So.2d 41 (1975)
STATE of Florida, Appellant,
v.
Ralph Anthony CIONGOLI, Appellee.
No. 74-25.
District Court of Appeal of Florida, Fourth District.
April 18, 1975.
Rehearing Denied June 16, 1975.
*42 Robert L. Shevin, Atty. Gen., Tallahassee, and Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, for appellant.
Charles W. Musgrove, West Palm Beach, for appellee.
PER CURIAM.
A few minutes after a marijuana-buy related robbery of $93.00, the two victims gave the Boca Raton Police a detailed description of the two robbers and of their clothing and the gun and knife used. They described the robbers as driving a dirty, 1970 model, black over white, two-door Javelin automobile with Pennsylvania tag, the last three digits of which were 701. Within an hour, pursuant to a bolo, highway patrolmen apprehended the defendant and his companion at the Miami Turnpike exit and the pair were returned to the Boca Raton Police Station where, two to two and one-half hours after the robbery, both accused and their automobile were shown to, and positively identified by, both victims. There was no line-up as such. Eight months later an evidentiary hearing was held on a motion to suppress the evidence (gun, knife, marijuana, and $93.00) *43 seized at the time of the arrest and all identification testimony of the victims. The defendant, but not his co-defendant, was present at the hearing. There was some evidence of a change of appearance of the defendant between his arrest and the hearing.
The trial judge correctly ruled that there was ample probable cause to stop the vehicle, to arrest the accused and to conduct a search of their vehicle and their persons. The trial judge did not suppress the testimony of the two victims as to the robbery, which included the descriptions of the robbers, and he did not suppress or prohibit the victims-witnesses from identifying the accused in the courtroom at trial as being the robbers, but he did suppress the eye witness testimony concerning the two to two confrontation at the Boca Raton Police Station because at the evidentiary hearing, one witness could not then identify the defendant and the other witness was at first unsure and only after some observation became certain of the identity of the defendant as one of the robbers. The trial judge found the police station show-up "impermissibly suggestive and gives rise to a substantial likelihood of misidentification" because he believed that if the trial went like the evidentiary hearing (viz: that the witnesses might be unable, because of the passage of time, changes in appearance or otherwise, to readily or positively identify the accused) the jury would place "undue emphasis" on the police station show-up and convict the defendant on the basis of an out-of-court identification rather than an in-court identification at trial. This the trial judge thought was improper because he felt that the whole process of the jury trial  "the whole emphasis"  should be whether or not the witness-victim can then and there before the jury positively identify the defendant as the perpetrator.
United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), relate only to the right of an accused to counsel at a post-indictment[1] line-up, therefore, those cases are not directly applicable to the pre-indictment show-up here. However, the holding of Wade and Gilbert is that a post-indictment line-up, is a critical stage of prosecution and when conducted in violation of an accused's sixth amendment constitutional right to have counsel present, is illegal and evidence thereof is per se inadmissible and, further, such illegality is presumed to also "taint" the witness' memory and the witness' in-court identification must be conditionally excluded and is inadmissible unless the trial court first determines, by clear and convincing evidence, that the in-court identification is, in fact, not tainted by the illegal line-up but is based on sufficient prior dependable observations independent of those made at the illegal line-up. The second part of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1968, 18 L.Ed.2d 1199 (1967), recognizes that, independent of any right to counsel under Wade and Gilbert, a confrontation "unnecessarily suggestive and conducive to irreparable mistaken identification" may deny due process of law under the fourteenth amendment to the federal constitution. Stovall noted that the practice of showing suspects singly to identifying witnesses was widely condemned but the court refused to hold that practice illegal per se and concluded that its validity "depends on the totality of the circumstances surrounding it." The court in Stovall did not in any way specify the procedural aspects of such a due process violation nor did it suggest *44 that, by analogy to the Wade-Gilbert counsel problem, the Wong Sun[2] taint principle would conditionally exclude a later in-court identification.
We believe this case should be and is controlled by Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), a case considering the misidentification possibilities and the suggestiveness involved in the police showing an identifying witness only the photographs of a single suspect. Simmons is pertinent as follows: (1) it recognizes that the Wade-Gilbert holding constitutes a departure from the general rule that the manner of an extra-judicial identification affects only the weight, not the admissibility, of identification testimony at trial; (2) it recognizes that the suggestiveness issue involved in photographic displays is similar to that involved in the Stovall type "one-man line-up"; (3) while recognizing the hazards involved in displaying photographs of suspects to victims, the court declined to prohibit its employment; (4) after noting that the unmasked robbers were viewed for up to five minutes in a well lighted bank in the afternoon and reviewed the photographs "only a day later, while their memories were still fresh" the court concluded that even though the procedure was short of ideal there was little room for doubt that the identification of Simmons was correct.
We hereby reverse and vacate the order suppressing evidence of the police station identification. We do not reverse because the trial judge here, as in Cribbs v. State,[3] did not apply Wade and presume an improperly suggestive pre-trial identification taints and conditionally excludes an in-court identification. We do not agree that Wade applies here.[4] Neither do we reverse because the trial judge here, as in Rudd v. Florida,[5] did not specifically find the show-up was likely to induce irreparable misidentification, although that would be a sufficient technical basis. We conclude that neither the Supreme Court of the United States nor of the State of Florida[6] has mandated an evidentiary rule of exclusion applicable to suggestive pre-indictment or pre-trial identification procedures. Further, we respectfully disagree with the trial judge on his reasons and conclusions. For example, we do not agree that evidence should be suppressed because of concern as to the weight ("undue emphasis") the jury might give the evidence. The difficulty of the victims in identifying the accused at the suppression hearing would lead us to the conclusion, contrary to that of the trial judge, that the police station show-up was not suggestive because anything causing the witnesses to form or retain a mental image of the accused at the police station *45 would have aided the witness to more readily recognize the accused at the hearing. The observation and ready identification of the accused by the witnesses so soon after the alleged robbery appears to us to be conducive to an accurate identification and entitled to be given more weight, by both the court and the jury, than the difficulty by the witnesses in making an identification after the lapse of eight months, especially in view of the change in appearance of the accused.[7]
The order appealed is affirmed insofar as it denies the motion to suppress evidence seized from the searched car and is reversed as to the portion suppressing evidence relating to identification.
CROSS and MAGER, JJ., concur.
COWART, JOE A., Jr., Associate Judge, concurs specially.
COWART, JOE A., Jr., Associate Judge (concurring specially):
I concur with everything said in the majority opinion, but would go farther.
The factual questions in a counsel at line-up problem under Wade is simply whether a line-up occurred after indictment and whether defense counsel was then present or his presence properly waived. These simple factual questions are seldom contested and their determination can easily be made by the trial court and contrast with the subsequent probing of the witness' subconscious mind in search of taint which is, as Justice Black observes in Part III of his dissent in Wade, practically impossible. However, unlike the threshold Wade-Gilbert counsel questions the Stovall type question of suggestiveness in preindictment identification procedures is similar to the second stage Wade-Gilbert taint inquiry and is exceedingly complex and involves determination of the truth as to the facts both at the time of the original observation and at the subsequent line-up, show-up or photographic exhibition and the possibilities of isolating and removing the effect of any improper influence, i.e., the irreparability of the suggestiveness. Each case also necessitates an analysis of the effect of numerous matters, such as: the opportunity the witness originally had to observe the perpetrator, including the distances, the lighting conditions, the duration, the number of views, and the vividness of the visual and audio impressions involved in the original observation and all other factors known to psychologically aid in the formation of a memory impression, as well as ancillary facts, such as, prior acquaintance or observation, and observation of unique connected property, such as weapons, vehicles, clothing, disguises, etc. Likewise, each case requires an analysis of the various matters and circumstances involved in the subsequent line-up, show-up or photographic display and argued to have suggested or influenced a misidentification. The lapse of time between the alleged act and the line-up, show-up or photographic exhibition is another important factor to consider. Each case also requires a study of the particular witness's abilities to observe, discern, recollect and describe and the witness's susceptibility to suggestion and the extent, if any, suggestions present were accepted and the witness was actually influenced. This is most important because it relates to the practical side of the problem and to the basic question of whether the confrontation was actually "conducive" to a misidentification and, if so, if it was "irreparable". This requires an understanding of the vast differences in human nature. Some persons, lacking strength of character because of youth, mentality, nature, or otherwise, are inexperienced, vague and highly susceptible to suggestion while others are clear-minded, strong-willed and firmly reject all suggestions except those exactly consistent with their existing mental impressions. *46 The weighing and evaluation of all these matters is such that good and wise men may reasonably draw contradictory inferences, form varying opinions and reach different conclusions because of differences in their own knowledge, experience, perception and discernment. This is why the judges on this appellate panel disagree with the trial judge in this case. These factors and the weight to be given them and the inferences to be drawn therefrom, by their very nature, are not capable of formulation into rules of law that can be applied uniformly by the trial bench and reviewed for legal error. The most accurate resolution of these matters, in a specific case and in practice generally, will result from the combined judgment decision of a group of persons of varying experience and such a body, in the form of the jury, is readily and legally available. The determination of the effect of a suggestion on a particular person involving as it does the credibility of witnesses, the probative value of evidence and the convincing and persuasive effect or weight of evidence in determining a conclusion of fact is exactly the same as that involved in many, many conclusions of fact which the jury is entrusted to determine and is a part and parcel of a jury trial which is constitutionally accorded to an accused in criminal prosecutions. When an accused demands a trial by jury, he is, and should be, entitled to have the jury determine all factual questions not only involving the elements of the offense and his identification as perpetrator but also involving his other constitutional rights. In ultimate effect all pre-trial line-up, showup and photographic display procedures, and the suggestiveness thereof, are but facets of "the totality of the circumstances" relating to proof that the accused was the perpetrator of a crime and the jury should weigh all relevant and material circumstances touching upon that question in making their final conclusion of whether the State has convinced them beyond a reasonable doubt of the guilt of the accused. In reaching their verdict the jury must necessarily determine the weight to be accorded the witnesses' identifying testimony which is, itself, but one of the circumstances upon which the jury may base its decision. The circumstances in addition to the testimony of the identifying witness may be so compelling in a given case that the jury need accord the victim's testimony little weight in order to be convinced by legally sufficient evidence. This may be true in cases where fingerprints are involved or in a case such as this one. After all, what are the statistical odds that at a given moment of time there was, within an hour's drive of Boca Raton, more than one dirty 1970 model, black over white, two-door Javelin automobile with Pennsylvania tag, the last three digits of which were 701, containing two white males (of even the general description of the accused) wearing certain clothing and having in their possession a gun, a knife, marijuana and $93.00?
Simmons v. United States, cited by the majority, also holds that the danger that police identifying techiniques may result in misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Concurring with the majority's rejection of Simmons' due process claim, Justice Black observes that the court's discussion of the evidence is concerned with the weight of the testimony given by the identifying witnesses which "is not a question for the Court but for the jury."
I would hold that suggestiveness, its effect and cure, should not be determined by the trial judge as a question of competency and admissibility of evidence and that the exclusionary rule should not be extended to this problem,[8] but that, subject to other legal *47 limitations,[9] the jury should always be allowed to consider all evidence and factors involved in deciding what weight to give to pre-trial line-ups, show-ups, and photographic displays. The weight of evidence relating to the suggestiveness involved and its effect in reducing the probative value of pre-trial identification procedures, are properly a part of the evidence the jury should be permitted to consider on the general issue of identification of the accused as the perpetrator of an alleged crime. If all of the facts were always given to the jury, the result, in every such case, would be to preserve and enhance the right to a jury trial and the jury's finding of guilt or not would necessarily, inherently and automatically, include a proper determination of the accused's procedural due process rights. I believe the jury can be trusted to understand.
NOTES
[1] Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) affirmed that the constitutional rights announced in Wade and Gilbert accrued only with the commencement of criminal prosecution and declined to extend a per se exclusionary rule to testimony of identification taking place prior to indictment. Florida had previously taken the same position, see Perkins v. State, 228 So.2d 382 (Fla. 1969), and Robinson v. State, 237 So.2d 268 (4th DCA Fla. 1970).
[2] Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.
[3] The trial judge in Cribbs v. State, 297 So.2d 335 (2d DCA Fla. 1974), found a line-up impermissibly suggestive and suppressed the line-up but not the in-court identification. In vacating judgment the Second District Court of Appeal held this to be a misunderstanding of Wade and specifically declined to limit the conditional exclusionary rule of Wade to the counsel at line-up question and apparently applied it to the Stovall suggestive identification procedural due process violalation question. Our conclusion in this case is in conflict with the views expressed in Cribbs.
[4] Wade does not apply because the right to counsel at a post-indictment line-up is not involved here.
[5] In Rudd v. Florida, 477 F.2d 805, 809 (5 Cir.1973), the trial judge "did not specifically find that the showup was likely to induce irreparable misidentification, a finding indispensable to proper application of the Simmons test."
[6] Our Supreme Court in Chaney v. State, 267 So.2d 65 (Fla. 1972), held that the showing of a single photograph of a suspect to the victim did not fatally taint the victim's identification in view of her prior opportunity to observe her attacker and the corroborating effect of his fingerprints. In Ashford v. State, 274 So.2d 517 (Fla. 1973), a conviction following a one-to-one pre-indictment confrontation identification was upheld.
[7] See Annotation entitled "Admissibility of evidence of show-up identification as affected by allegedly suggestive show-up procedures", 39 A.L.R.3d 791.
[8] See Note: The Fourth Amendment Exclusionary Rule: Past, Present, No Future, The American Criminal Law Review, Vol. 12, No. 3, Page 507.
[9] In Florida, testimony of a third person who witnesses an extrajudicial identification is admissible, Willis v. State, 217 So.2d 106 (Fla. 1968); but only in corroboration of the identifying witness at trial, Johnson v. State, 249 So.2d 452 (4th DCA Fla. 1971); although its erroneous admission as substantive evidence may be harmless error, Moore v. State, 267 So.2d 850 (4th DCA Fla. 1972).