338 So.2d 231 (1976)
Sammie Lee JACKSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 75-1902.
District Court of Appeal of Florida, Third District.
September 14, 1976.
Rehearing Denied November 1, 1976.
Phillip A. Hubbart, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen. and Brian H. Leslie, Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY AND NATHAN, JJ.
PER CURIAM.
The defendant, Sammie Lee Jackson, was found guilty by a jury of (1) robbery, and (2) aggravated battery. The charges arose out of the same criminal episode. After adjudicating Jackson guilty on both charges, the trial judge imposed a sentence of 30 years to the state prison on the robbery count and a consecutive five year sentence on the aggravated battery count.
The points presented on appeal urge (1) that the court erred in denying defendant's written motion to suppress "all testimony as to the pre-trial identification and further preclude the State from offering any in-Court identification;" (2) that the court *232 erred in sentencing the defendant to consecutive terms where the crimes arose out of the same "transaction." We hold that the trial judge ruled correctly in each instance and we affirm the judgment and sentence.
The defendant's contentions on the motion to suppress are based upon the fact that subsequent to the crimes and the time the defendant became a suspect, the police obtained from an acquaintance of the defendant a color photograph of a group of persons in which the defendant is said to have appeared and used the photograph together with black and white photographs of the defendant and others to secure from the victim the initial identification of the defendant. A strange aspect of this contention is that the defendant testified that he does not appear in the group photograph. He claimed that one of the persons in the group photograph was a person who merely happens to look like him. After obtaining this photograph, the detective selected fourteen black and white "mug shots" from police files. Included among these photographs was a "mug shot" of the defendant. The other thirteen photographs were of five other individuals with several duplicate photographs of each.
Lieutenant Casamayor met with the victim, Adelfa Rodriguez, on July 20, 1975, and showed her the photographs. Upon viewing them, the victim looked at the color photograph, passed it over, looked at other photographs, then returned to the color photograph in which she identified one of the group as being her assailant. She did not identify the black and white "mug shot" of the defendant. It is conceded that the victim testified at trial that she could identify the defendant based solely on her memory without the use of any photograph.[1]
We hold that affirmance upon point 1 is proper under the holding of the Supreme Court of Florida in Chaney v. State, Fla. 1972, 267 So.2d 65, where, although a single photograph of the appellant was shown and it was revealed to the prosecutrix that appellant had been jailed for raping another girl, the Supreme Court held, "In fact, it would be unreasonable to preclude the use of such a photograph for this pre-arrest purpose." The court went on to state the following:
* * * * * *
"We conclude that the totality of the particular circumstances of this case does not disclose that prosecutrix's identification of Appellant was fatally tainted to the point of denial of his rights of due process." 267 So.2d at 69.
* * * * * *
In view of the fact that the victim herein observed her assailant in a well-lit room in the afternoon prior to and during her attack and reviewed the photographs only nine days later while her memory was still fresh, there is little room for doubt that the identification of the defendant was correct. See State v. Ciongoli, Fla.App. 1975, 313 So.2d 41.
The second point, which urges that the trial court erred in sentencing the defendant to consecutive terms upon convictions of robbery and aggravated assault because both convictions arose out of the same criminal incident, relies upon the holding in Yost v. State, Fla.App. 1971, 243 So.2d 469. In that case, we held:
* * * * * *
"In Florida, where an information contains more than one count, but each is a facet or phase of the same transaction, only one sentence may be imposed; and the sentence which should be imposed is for the highest offense charged."
* * * * * *
Subsequent to the Yost opinion, the Supreme Court of Florida dealt with this *233 problem in Jenkins v. Wainwright, Fla. 1975, 322 So.2d 477, where the Supreme Court pointed out:
* * * * * *
"Further, in Estevez v. State, 313 So.2d 692 (Fla. 1975), we held that breaking and entering with intent to commit grand larceny and grand larceny are each separate offenses for which separate sentences may be imposed. We specifically said that these offenses were not `facets of the same transaction' although they arose out of the same incident."
* * * * * *
The court further held:
"The facts in the instant case show that the petitioner had possession of two separate drug substances, each of which constitutes in and of itself a separate violation of law. If multiple sentences are proper as set forth in Steele v. Mayo, 72 So.2d 386 (Fla. 1954), supra, Norwood v. Mayo, 74 So.2d 370 (Fla. 1954), supra, and Estevez v. State, supra, they are proper in this instance, and we so hold."
* * * * * *
See also Moreno v. State, Fla.App. 1976, 328 So.2d 38 (released March 3, 1976).
Even if a temporal distinction between the two crimes should have been necessary for the imposition of sentences on each of the two crimes, the facts of this case would meet such a test because the record shows that the defendant first struck and beat the victim until she was rendered unconscious and then committed the robbery.
Having examined the points presented and finding no error, the judgments and sentences are affirmed.
NOTES
[1] The victim testified:

* * * * * *
"Q. But you've only known this person for a couple of minutes?
"A. Yes, but it was very close to his face, when he was choking me I was looking at his face, when he was choking me I was looking at his face."
* * * * * *