355 So.2d 1234 (1978)
Thomas Preston BAXTER, Appellant,
v.
STATE of Florida, Appellee.
No. 76-1601.
District Court of Appeal of Florida, Second District.
March 1, 1978.
Rehearing Denied March 28, 1978.
*1235 Robert H. Nutter and F. Dennis Alvarez of Bonanno, Nutter, Crooks & Alvarez, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr. and Charles Corces, Jr., Asst. Attys. Gen., Tampa, for appellee.
*1236 HOBSON, Acting Chief Judge.
Defendant appeals his conviction of sexual battery. He raises eight points on appeal. Only one of those points merits discussion. That point, dealing with the pretrial identification of defendant, has given this court great pause. However, a careful reading of the entire record convinces us that the suggestiveness of the photographic identification procedure did not affect the reliability of the identification witnesses' testimony. Consequently, we affirm the trial court's ruling denying defendant's motion to suppress the pretrial identifications and the identifications made during trial.
The essential facts developed at trial were as follows: One very early morning in August 1975, someone entered prosecutrix' apartment and awoke her from her sleep. As she awoke, she saw the figure of a man standing at her bedside. The man displayed a pistol and ordered prosecutrix into another room. He then subjected prosecutrix to repeated sexual battery. Through much of the attack, the assailant wore a ski mask. However, at various intervals prosecutrix caught glimpses of the man without his mask as he stood in the dim light wearing a shirt. After the man left and the crime was reported, the prosecutrix gave the police a general description of the assailant. (Despite numerous repetitions of a description by the prosecutrix, and rigorous cross-examination, prosecutrix did not vary to any substantial degree in the characteristics she described.)
Shortly after the attack it occurred to prosecutrix that the assailant could possibly have been an acquaintance she had recently met. She subsequently confirmed that the acquaintance had not been the attacker. Later she briefly saw a man acting suspiciously towards her. She thought that this man may resemble the attacker and notified the police. She later saw a picture of that man and identified the man as not being the assailant.
In January 1976, a sheriff's deputy brought to prosecutrix an envelope containing a photo-pak. The photo-pak consisted of eleven color photographs of men with similar facial features. Three of these photographs were of appellant. One of the three photographs depicted a frontal view of appellant. In that picture appellant sported a moustache and was wearing a loose-fitting shirt. In another picture appellant was not wearing a shirt, his head was turned to the side, and he was wearing a moustache. The third photograph of appellant was a number of years older than the other two photographs. In this third picture appellant was not wearing a moustache.
When prosecutrix was handed this envelope she removed the stacked photographs and began to look at them one by one. She could not see all the pictures at the same time. When prosecutrix came upon the first picture of appellant she exclaimed, "This is the face." (Prosecutrix testified at trial that when she saw this picture she was perfectly certain that the man was the assailant.) She continued through the stack so as to leave no stone unturned. She then saw the second picture of appellant. When she saw appellant shirtless in the picture, she stated, "This is definitely the physique." The prosecutrix did not identify the third, oldest, picture of appellant (without a moustache) as being of the assailant. After this identification, prosecutrix was shown numerous other photographs of appellant which were not in the photo-pak. The entire photo-pak was introduced into evidence before the jury. Prosecutrix also made an in-court identification of appellant at trial.
The state presented Williams Rule testimony by the victim of another sexual battery to prove identity. A vast number of the details of the attack on the Williams Rule witness are virtually identical to those of the attack on the prosecutrix. This witness had an opportunity to view her attacker in the light of dawn. That assailant also did not take off his shirt. She was shown the stack of pictures in the same photo-pak shown prosecutrix. The first picture of appellant to appear in the stack was the picture of appellant without a shirt. She made a positive identification of appellant *1237 as the attacker immediately upon seeing this picture. At trial this witness again identified appellant as the assailant.
This photo-pak, shown to prosecutrix and the Williams Rule witness, was the fourth or fifth photo-pak shown to the women. It was the only photo-pak containing color photographs. This was the only photo-pak containing more than one picture of an individual. This was the only photo-pak containing a photograph of an individual not wearing a shirt. At no time did prosecutrix or the witness identify a photograph of another person as a photograph of the assailant.
Appellant contends that the photo-pak was, of itself, suggestive. We agree. Appellant also contends that the manner in which this photo-pak was used was impermissibly suggestive and therefore admission into evidence of the fruits of this procedure violated appellant's right to due process. We disagree and find that there was no substantial likelihood of misidentification and hence due process has not been offended.
Appellant does not contend that he was denied his right to counsel. Appellant does contend that the photographic identification procedure employed by the law enforcement officers was so suggestive as to deny him his right to due process of the law under the Fourteenth Amendment to the Constitution and Article I, Section 9 of the Florida Constitution. Appellant relies heavily upon Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
The landmark cases[1] applying due process requirements to extra-judicial identifications in criminal cases were penned against a backdrop of law admitting virtually all such evidence and leaving the determination of trustworthiness solely to the jury in the exercise of its duty to weigh the evidence. The suggestiveness of the identification procedure bore only on the weight of the evidence and not on its admissibility.[2] Through these cases, due process intervenes to establish a threshold of reliability for this evidence. An impermissibly suggestive identification procedure so undermines the reliability of eyewitness identifications and presents such a danger of misidentification as to violate due process. Foster v. California, supra, note 1, 394 U.S. at 443, 89 S.Ct. 1127. It is the danger of misidentification, rather than the mere occasion of suggestion, that constitutes the basis for exclusion of the identification evidence. Neil v. Biggers, supra, note 1, 409 U.S. at 198, 93 S.Ct. 375.
Stovall v. Denno[3] first set the standard for determining whether evidence of an extra-judicial identification meets threshold reliability. Evidence which is the fruit of a suggestive identification procedure does not meet threshold reliability where the procedure gives rise to a very substantial likelihood of misidentification. Simmons v. U.S., supra; Neil v. Biggers, supra, note 1. See also Jenkins v. State, 228 So.2d 114 (Fla. 3d DCA 1969). Due process requires that evidence posing such a high danger of misidentification be withheld from consideration by the jury. This standard is applicable to photographic identification procedures. Simmons v. United States, supra. The degree of danger of misidentification required for exclusion of the evidence is appropriately high so as not to deprive the jury of evidence which is reliable despite the somewhat suggestive procedure and so as to preserve the jury's function to weigh the evidence. Once threshold reliability is established, the accused may employ the traditional methods for testing the weight which the jury *1238 should attach to the evidence. The accused may use cross-examination, impeachment, rebuttal testimony, and closing argument to persuade the jury that the identification was mistaken. See Simmons v. United States, 390 U.S. at 384, 88 S.Ct. 967, and Jenkins v. State, supra. See also State v. Ciongoli, 313 So.2d 41 (Fla. 4th DCA 1975) (especially the concurring opinion of Coward, A.J.).
Essentially what we are dealing with is the competency of the witness to make the identification after that witness has been subjected to the suggestiveness of the identification procedure. In order to warrant exclusion of evidence of the identification, the identification procedure must have been so suggestive, and the witness' unassisted ability to make the identification so weak, that it may reasonably be said that the witness has lost or abandoned his or her mental image of the offender and has adopted the identity suggested. Simmons v. United States, 390 U.S. at 383-84, 88 S.Ct. 967. In making this determination of threshold trustworthiness, the trial judge must consider the totality of the circumstances surrounding the extra-judicial identification. These circumstances will include the ability of the witness to perceive and preserve a mental image of the offender, the method of identification employed, accompanying conversation or actions, the positiveness and manner of the witness' identification, and, of course, whether the witness expressed doubts about the selection or failed to identify the accused. See Neil v. Biggers, supra, note 1, 409 U.S. at 199, 93 S.Ct. 375. A determination of suggestiveness in identification procedures is facilitated in the case of photographic identifications where all the photographs being compared for identification may be produced in court.
Applying these tests to the case at bar and considering the totality of the circumstances surrounding the identifications, we hold that the trial court did not err in finding the identifications sufficiently trustworthy to warrant consideration by the jury. First we consider the photo identification by the prosecutrix. We cannot say from prosecutrix' testimony that she did not have an adequate opportunity to view the assailant and to form a mental image of his appearance. Shortly after the offense she gave a general description of the assailant and at all times thereafter did not substantially deviate from this description. Prosecutrix viewed numerous other photo-paks but did not identify anyone. When she saw the first picture of appellant she immediately identified him as the assailant. She was emphatically certain of this identification before she viewed any other pictures of appellant. See Neil v. Biggers, supra, note 1, 409 U.S. at 200-201, 93 S.Ct. 375. The fact that these were the first color photographs displayed to prosecutrix does not establish impermissible suggestiveness, especially since all of the pictures in that photo-pak were color photographs. It is obvious that the suggestiveness of the photo-pak played no role in prosecutrix' extra-judicial identification.
The in-court identification by prosecutrix was not tainted by the photo identification procedure. The trial court could have reasonably found that prosecutrix' identifications were based upon a mental image of the assailant fixed prior to, and not supplied by, the photo-pak and other photographs of appellant. Coleman v. Alabama, supra, note 1, 399 U.S. at 6, 90 S.Ct. 1999. Consequently, the trial court did not err in allowing prosecutrix to make an in-court identification of appellant as the attacker.
The Williams Rule witness also testified to her extra-judicial identification of appellant as the man who attacked her. She identified appellant from the same photo-pak viewed by prosecutrix. She identified appellant in the same manner, that is, she was handed the stack of pictures which she viewed one at a time until she came upon the first picture of the appellant, which she positively identified as the assailant. Although this picture was the picture of appellant not wearing a shirt, this does not render the identification procedure impermissibly suggestive since the witness did *1239 not see the assailant without a shirt and expressly based her identification on the face in the picture. There was no very substantial likelihood of misidentification. Additionally, shortly after the attack on this witness, she participated in the preparation of a composite sketch of the attacker. This composite sketch eventually led to the apprehension of appellant on charges of sexual battery of that witness. The trial judge had that sketch before him and certainly could have reasonably found that this image, fixed in the mind of the witness prior to the photo-identification procedure, represented appellant. Admission of that witness' testimony of her extra-judicial identification was not error. Admission of this witness' in-court identification of appellant was not error for the same reasons that prosecutrix' extra-judicial identification of appellant did not taint her in-court identification.
While the identifications were sufficiently reliable to warrant submission to the jury, it cannot be said that they were the only evidence linking appellant to the offense. For instance: Prosecutrix testified that the assailant had bumps or marks in the same area in which appellant once had venereal warts. Prosecutrix described the pistol used by the assailant and the clothes worn by the assailant. At trial, prosecutrix identified a pistol and some clothes belonging to appellant as being at least very similar to those used by the assailant. (The Williams Rule witness also described and identified these articles.) During both attacks, the assailant removed almost all of his clothes except his shirt (which prosecutrix testified was long-sleeved). Appellant has a tattoo including the name "Tommy" on his right arm. This evidence, both direct and circumstantial, negates any very substantial likelihood of misidentification. Jenkins v. State, supra.
The actual photo-identification procedures did not make it all but inevitable that the witnesses would identify appellant whether or not he was in fact "the man." Cf. Foster v. California, supra, note 1, 394 U.S. at 443, 89 S.Ct. 1127. The trial court did not err in admitting the identification testimony into evidence. Appellant's remaining points have been carefully considered and found to be without merit. Appellant having failed to demonstrate reversible error by the trial court, the judgment and sentence of that court are hereby
AFFIRMED.
SCHEB and OTT, JJ., concur.
NOTES
[1] Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1969); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
[2] See Annot., 71 A.L.R.2d 449 § 5 (1960); Simmons v. United States, 390 U.S. at 382, 88 S.Ct. 967; Neil v. Biggers, 409 U.S. at 199, 93 S.Ct. 375.
[3] Supra note 1.