*56 ON PETITION FOR REHEARING
BOARDMAN, Judge.
The state has filed a petition for rehearing asserting that our opinion was in error as to certain facts upon which that opinion was based and that we misapplied the relevant law. We disagree and, therefore, the petition for rehearing is denied. However, in an abundance of caution and to avoid misinterpretation and misunderstanding, we withdraw our original opinion and substitute the following as the opinion of the court which merely amplifies our initial position.
This is an appeal from the judgment and sentence entered in the second trial of appellant/defendant Calvin Carter for rape in violation of 794.01, Florida Statutes (1973). We reversed the judgment and sentence entered in the first trial and remanded for a new trial. See Carter v. State, 332 So.2d 120 (Fla. 2d DCA 1976). In this appeal appellant raises six points. Only that point directed to the admissibility of the identifications of appellant by three witnesses merits discussion. This issue was not raised in the first appeal.
Appellant contends that the trial court erred in allowing testimony from the prose-cutrix, her husband, and her father-in-law as to identification of Carter over timely objection alleging that the out-of-court processes used to identify appellant were impermissibly suggestive and affected the reliability of their in-court testimony.
After carefully reading the entire record, we affirm the trial court’s finding of admissibility as to the identification made during trial by the husband. We reverse the trial court’s ruling denying the motion to suppress testimony concerning the pretrial identification process by all three witnesses and the finding of admissibility as to the identifications made during trial by the prosecutrix and the father-in-law;
Testimony introduced at the hearing on the motion to suppress and at trial revealed the following facts.
The prosecutrix was acquainted with appellant prior to the rape. She worked in an auto parts store in the same city where appellant worked as a mechanic at a garage. The prosecutrix stated that she had heard appellant’s voice at least once (R.692) before the rape, and appellant said she would have heard him talk at least fifty times because he had to go to the auto parts store several times a week and would usually ask the girls working there if they wanted a Coke (R.290, 953-55). Furthermore, both appellant and the prosecutrix said they had had a conversation prior to the rape about some property the prosecutrix and her husband had for sale (R.707,1095). The rapist talked to the prosecutrix during the rape, but spoke in a whisper. When she first spoke to the police about the incident early the afternoon following the crime, she said that she could not identify her assailant, that there was nothing about the man by which she could identify him, and that she did not think he had known her prior to the rape.
The husband and father-in-law both knew appellant and had heard him talk before the rape occurred. Just prior to the time the prosecutrix was raped, the father-in-law received a telephone call requesting a repair truck. The husband, on another telephone, overheard the conversation. The husband knew Carter well enough prior to the rape to have picked his voice out in a lineup. The husband commented to his wife immediately after receiving the call that the caller sounded like Carter. While the husband and father-in-law were looking for the alleged broken down truck and it was becoming more and more apparent that the call was a hoax, they discussed the identity of the caller, who had not identified himself by name. The husband stated that the voice sounded like that of Carter. The father-in-law was uncertain as to whether it sounded like that of appellant or appellant's brother. However, the husband, who was interviewed by the police ten or eleven hours after the rape, did not mention his belief that Carter was the caller.
The voice identification lineups were held some six months after the rape and over five months after appellant was arrested *57 and charged with the crime. All three of the witnesses were aware that appellant had been charged with the rape and expected him to be in the lineups. There is no showing made in the record that the characteristics of appellant’s voice were similar to those of other participants in the lineup.
In the lineup procedure used for identification by the prosecutrix the participants stood behind a sheet in a doorway and repeated in a whisper a sentence spoken by the rapist during the course of the rape. Both the prosecutrix and her husband had by this time formed the opinion that Carter was the rapist. The prosecutrix’s husband was present in the room with the prosecu-trix, and she stated that although her husband did not indicate which voice to choose she may have looked at him while the participants were speaking. Counsel for appellant at that time was one of the lineup participants. No one acting on appellant’s behalf was in the room with the prosecutrix while the lineup was being conducted. The prosecutrix knew and had heard several of the voices and had varying degrees of familiarity with the nine men in the lineup (R.31-33, 39) including appellant’s prior to the time the lineup was conducted (R.837-838). She identified appellant’s voice as that of her assailant at the lineup.
In the lineup procedure used for identifications by the husband and father-in-law the same nine participants repeated into a telephone a statement made by the caller the night of the rape. The witnesses listened to the statements on the telephones in separate rooms. Each witness was to indicate on a sheet of paper after the number of each participant whether he was the caller. They were also to note the name of any participant whose voice they knew. Both men recognized appellant’s voice as that of the caller and identified him by name. They also recognized the voices of some of the other participants. The testimony of the husband and the father-in-law was equivocal as to what point in time prior to the lineup that they considered Carter the probable assailant and that they could positively identify the caller’s voice as that of Carter.
At trial Ralph Cunningham, an investigator for the state attorney’s office, testified as a witness for the state that he had interviewed appellant a few days after the rape and tape recorded the interview without appellant’s knowledge. He then prepared a tape recording of the voices of appellant and several other persons and played it for the three witnesses for identification of the rapist. We cannot tell from the record how many other voices were included or how the test was administered to. each of the witnesses. Consequently, we cannot gauge the suggestiveness of the procedure nor the impact it had on future identifications. The husband and father-in-law identified appellant’s voice as that of the man who called for wrecker service the night of the rape, and the prosecutrix identified appellant’s voice as that of the rapist. The state proffered this evidence to the court, but it was not admitted.
Due process considerations preclude the admission of testimony concerning an out-of-court identification where the procedure engendered a substantial likelihood of misidentification in view of the totality of the circumstances. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In making a determination of the admissibility of an out-of-court or in-court identification the trial court must consider the totality of the circumstances to evaluate whether there is such a substantial likelihood of misidentification that the identification is rendered unreliable. Justice Powell speaking for the majority in Neil v. Biggers enumerated five factors relating to this determination: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’ degree of attention;' (3) the accuracy of the witness’ prior description of the criminal; (4) the level of certainty demonstrated by the witness at the identification procedure; and (5) the length of time between the crime and the identification procedure. See also Baxter v. State, 355 So.2d 1234 (Fla. 2d DCA 1978).
*58 The critical circumstances involved in the determination of the reliability of the out-of-court identification by the prosecutrix are: the six and one-half month span of time between the rape and the lineup; the brevity of the two or three minute encounter between the prosecutrix and the rapist during the rape; the prose-cutrix’s inability to identify appellant as the rapist at the time of the rape despite her acquaintance with him; the difference in the distances between the prosecutrix and the rapist during the rape and during the lineup; the manner a whisper was mimicked in the lineup; and the suggestion built into the lineup by the prosecutrix’s prior acquaintance with some of the participants, by her knowledge that Carter was charged with the rape, and by formulation in her mind and in the minds of others she knew that Carter was the rapist. We must say that under these circumstances the lineup was so suggestive as to engender an unreliable and, therefore, inadmissible identification. In such a situation the burden is on the state to show that any in-court identification was not tainted by the out-of-court lineup. E. g., Cribbs v. State, 297 So.2d 335 (Fla. 2d DCA 1974). There is no dispute as to the fact that the prosecutrix testified that her only basis for her identification of appellant was hearing him speak in the voice lineup. Accordingly, neither her testimony pertinent to the out-of-court identification nor an in-court identification by her is admissible.
The lineup process used for the out-of-court identification by the husband and the father-in-law suffers many of the same infirmities addressed in discussion of the other procedure. We hold that in these circumstances this procedure also was substantially likely to cause misidentification. Based on Neil v. Biggers, identifications resulting from these lineups are unreliable and inadmissible. However, there was evidence as to the husband from his testimony as to his comments to his wife and father that there was an independent basis to substantiate his belief that the caller was Carter. At trial, of course, the jury may be persuaded by the defense that the identification was mistaken. See Simmons v. United States, supra; State v. Ciongoli, 313 So.2d 41 (Fla. 4th DCA 1975). Further, it is for the jury to decide whether the caller was in fact the rapist. The father-in-law’s testimony does not pass the independent basis test because he clearly testified that he was not certain that Carter was the caller until the lineup despite his long-held suspicion that Carter was the assailant. Accordingly, neither witnesses’ testimony as to telephone identification procedure nor testimony by the father-in-law as to the identification of the caller is admissible. The husband may testify as to the identification he made of the caller on the night of the rape.
The judgment and sentence are reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
GRIMES, C. J., and OTT, J., concur.