531 So.2d 1382 (1988)
Thomas M. OVERTON, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1207.
District Court of Appeal of Florida, First District.
October 7, 1988.
*1383 Thomas M. Overton, pro se.
Robert A. Butterworth, Atty. Gen., and Elizabeth C. Masters, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Thomas M. Overton appeals the order denying his motion for post-conviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850. Overton alleges his trial counsel provided ineffective assistance, and also alleges error in the trial court's refusal to consider his amended rule 3.850 motion. We reverse and remand for further proceedings.
This case has a somewhat involved procedural history. On March 10, 1982, Overton was convicted of armed robbery, and sentenced to a 99-year term of incarceration. The conviction and sentence were affirmed on direct appeal. Overton v. State, 429 So.2d 722 (Fla. 1st DCA), review denied, 440 So.2d 352 (Fla. 1983). On May 28, 1985, Overton filed a motion for post-conviction relief. Before ruling on the motion, the trial court issued an order directing the State Attorney's office to respond. Thereafter, the trial court extended the time for the state's response until August 14, 1985. When the state had not responded by August 26, 1985, Overton filed a motion requesting that the trial court grant relief on the merits of his original motion or grant a new trial. The state's response was filed September 11, 1985, after which the trial court summarily denied Overton's motion. Overton sought rehearing, which the trial court denied, finding that he had waived his right to an evidentiary hearing. On appeal, this court reversed and remanded with directions to the trial court to consider the state's response, and to determine whether an evidentiary hearing was required. See Overton v. State, 494 So.2d 527 (Fla. 1st DCA 1986).
Thereafter, the trial court determined an evidentiary hearing was indicated, and appointed counsel to represent Overton. At the hearing, Overton presented an amended motion containing three new allegations pertaining to prosecutorial misconduct. The amended motion was prepared by Overton's appointed counsel. The trial court refused to consider the amended motion, finding the allegations contained therein were not appropriate to a rule 3.850 motion, but stated that Overton could raise these new grounds in a new motion. Upon conclusion of the presentation of Overton's case, the state's motion for a directed verdict was in effect granted, when the trial court ruled in favor of the state without requiring it to go forward with its case.
We note at the outset that we make no determination at this time concerning the trial court's rulings on each of the points Overton raises in his motion for post-conviction relief. Rather, our discussion is directed to those issues which should be addressed or given further consideration by the trial court on remand. Moreover, we find it unnecessary to address with particularity each discrete ineffective assistance of counsel allegation. To facilitate review, we have grouped these allegations into three general categories: (1) inadequate pretrial investigation and trial preparation; (2) failure to file a motion to suppress *1384 clothing identification; and (3) failure to object to improper prosecutorial comment and misstatements, and to preserve details of witness misconduct.
With regard to allegations of inadequate investigation and trial preparation, Overton contends his trial counsel was ineffective because, among other things, she failed to demonstrate that a pair of knit gloves purportedly worn by the armed robber, were too small to have been worn by Overton. In addition, Overton urges that had counsel conducted an adequate pretrial investigation, she could have impeached the witness Dorff who identified the knit gloves connected to the robbery, as having been worn by Overton on the same day as the robbery. That is, counsel could have shown that the knit gloves which Dorff identified at trial were not the gloves she had seen Overton wearing earlier on the day of the robbery.[1] Overton's motion indicates that when he attempted to obtain the trial evidence so that it would be available for the evidentiary hearing, he learned it had been destroyed three weeks earlier.
As a further example of inadequate preparation, Overton cites counsel's failure to impeach the witness Broussard, one of the clerks on duty when the store was robbed. Broussard's trial testimony concerning his identification of clothing purportedly worn by the robber, was not consistent with his deposition testimony, or with the deposition testimony of the investigating officers. In addition, Overton maintains counsel failed to make the discrepancies between his appearance and Broussard's description of the robber's appearance apparent to the jury. For example, at trial Broussard testified that the robber was five feet eight inches tall; in his motion, Overton points out that he is six feet two inches tall, and weighs 190 pounds.
Next, Overton urges that counsel's failure to investigate resulted in denying him the opportunity to present evidence that would have been exculpatory. According to the allegations of the motion, counsel knew that initially, investigators believed Overton was the "old man robber," i.e., the person who had committed a series of armed robberies while wearing an old man rubber mask and carrying a weapon which had been stolen in a prior burglary. The stolen weapon was identified as the one used in the robbery in this case. This weapon was found in a shed, together with the knit gloves and other items linked to the robbery. When Overton asked his counsel about other charges, thinking he had been charged with the other "old man robberies," counsel advised that the other charges had been dropped. Overton now contends that through proper investigation counsel could have determined that he was out of the state when the gun used in this robbery was stolen, and when the other "old man robberies" were committed, thus casting a reasonable doubt as to his guilt in the instant case.
The second general category of alleged ineffective assistance of counsel concerns counsel's failure to file pretrial motions to suppress the identification of clothing allegedly worn by the robber during the commission of the crime. At trial, Broussard, a clerk working in the store at the time of the robbery, testified that shortly after the robbery, officers brought a vest, a blue jacket, and a blue cowboy hat into the store, which he [Broussard] identified as having been worn by the robber. According to Broussard's trial testimony, he was shown the garments before he was asked whether he could identify Overton. At the evidentiary hearing, Broussard admitted that his trial testimony regarding the clothing identification was false, since in actuality, he did not see the clothing on the night of the robbery. Instead, he was shown the items of clothing at the police station about a week after the crime was committed.
The third ineffective assistance of counsel category includes an allegation that counsel failed to object to statements made by the prosecutor in closing argument, which statements could have been construed *1385 both as a comment on Overton's right to remain silent, and as requiring Overton to prove his innocence. In addition, Overton contends counsel was ineffective for failing to object to: (1) misstatements of fact which inferred to the jury that there were no fingerprints on the gun, when in fact there were prints on the gun  but the prints were not Overton's; (2) the prosecutor's rhetorical question, "How would you expect a burglar to act, a robber to act ...," which suggested to the jury that Overton had a prior criminal record; (3) the prosecutor's inaccurate characterization of Overton's prior record, which may have had an effect on the sentence imposed; and (4) the report that the witnesses in this trial discussed their trial testimony with each other, in direct contravention of the trial court's directive.
Overton's amended motion contains allegations that the prosecutor knowingly used perjured testimony at trial, that the prosecutor was guilty of misconduct with regard to certain witnesses testifying at trial, and that investigators failed to investigate a potential suspect and one investigator stated to a state witness that Overton had "failed his lie detector test and was guilty as hell."
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court provided a standard for evaluating ineffective assistance of counsel, as gleaned from a review of various federal and state court decisions dealing with the subject. The standard set forth in Strickland states, in part:
The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
.....
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
.....
the proper standard for attorney performance is of reasonably effective assistance.
466 U.S. at 686-687, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-693. See also Downs v. State, 453 So.2d 1102 (Fla. 1984). In other words, one challenging a conviction on grounds of ineffective assistance of counsel, must do more than show that counsel's performance was deficient  rather, the "[d]efendant must affirmatively prove prejudice." Downs, 453 So.2d at 1108. The test for prejudice is 
that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Downs, 453 So.2d at 1108. With regard to counsel's duty to investigate, the Court observed:
strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.
Strickland, 466 U.S. at 690-691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.
*1386 We are mindful of the Supreme Court's adjuration to view attorney performance without the "distorting effects of hindsight, ... and to evaluate the conduct from counsel's perspective at the time." See Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Nevertheless, we express some concern in this case at defense counsel's failure to become better informed with regard to various aspects of the evidence. It appears that counsel's omission in this regard may have denied Overton an opportunity to refute testimony which linked him to evidence involved in the robbery.
The focus of the second allegation regarding the inadequacy of counsel's pretrial investigation relates to counsel's failure to compare Broussard's deposition testimony with the depositions of the arresting officers. Such a comparison would have revealed that Broussard's trial testimony regarding his identification of clothing worn in the robbery was false. Neither of the clerks in the store at the time of the robbery identified Overton as the perpetrator. Thus, two pieces of evidence linking Overton to the crime, i.e., the knit gloves and clothing purportedly worn by the robber, were based on erroneous, hence impeachable, testimony.
Relief from judgment on the basis of newly discovered evidence is available where the evidence, "if taken as true, ... directly invalidate[s] an essential element of the state's case." O'Callaghan v. State, 461 So.2d 1354, 1356 (Fla. 1984); Hallman v. State, 371 So.2d 482, 485 (Fla. 1979). We conclude that application of this standard to Broussard's recanted trial testimony, while perhaps not invalidating the state's case, at least casts some doubt upon it.
The trial court found that counsel's failure to impeach Broussard and Dorff were tactical decisions, within the bounds of reasonably effective assistance. Again we are mindful that our role as a reviewing court does not allow us to share counsel's "firing line" perspective. Despite the deference due trial counsel's decisions, however, we are constrained to note that in this case the witness Broussard's recanted testimony was ascertained by subsequently appointed counsel, apparently through the exercise of no more than reasonable diligence.
Overton's next allegation concerning inadequate pre-trial investigation pertains to counsel's failure to determine the existence of purportedly exculpatory information. In Havard v. State, 489 So.2d 875 (Fla. 1st DCA 1986), this court held that an allegation of ineffective assistance predicated on counsel's failure to investigate alibi witnesses who could have substantiated a claim that appellant was in another state when the crimes were committed stated a facially sufficient claim for relief. See also Warren v. State, 504 So.2d 1371, 1372 (Fla. 1st DCA 1987)  an attorney's failure to "interview an identified available witness whose testimony might exonerate her client can constitute ineffective assistance of counsel."
Overton contends that since his counsel knew he was suspected of committing other "old man robberies," she should have ascertained the dates of the other robberies. He urges that had counsel done so, she would have learned that Overton's parole officer issued him a travel permit and that Overton was working out of state when the gun used in this robbery was stolen, and when the old man robberies were committed. Overton further maintains that had counsel adequately questioned the witness Ann Stokes, she would have ascertained that Stokes had given the police the name of another person that she [Stokes] suspected was the perpertrator of the robbery for which Overton stands convicted. The trial court deemed counsel's tactical decision appropriate, concluding that development of these purportedly exculpatory facts would have opened the door to details of Overton's prior criminal record.
The second ineffective assistance category is predicated on counsel's failure to move for suppression of the identification of clothing allegedly worn in the robbery. It is undisputed that nearly all identification procedures are suggestive to some extent, but those procedures do not become *1387 impermissibly suggestive and require suppression unless the totality of the circumstances indicates the identification resulting from the procedure is unreliable. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See also Carter v. State, 366 So.2d 54, 57 (Fla. 2d DCA 1978), cert. denied, 373 So.2d 461 (Fla. 1979); State v. Sepulvado, 362 So.2d 324, 326 (Fla. 2d DCA 1978), cert. denied, 368 So.2d 1374 (Fla. 1979); Baxter v. State, 355 So.2d 1234 (Fla. 2d DCA), cert. denied, 365 So.2d 709 (Fla. 1978).
Although the order does not set forth an express finding that an illegal showing occurred in this case, such finding is implicit in the trial court's determination that Overton failed to show that the clothing identification was predicated on the illegal showing. The record before us reflects that the first view the two store clerks had of Overton occurred while Overton was seated in a police car. Thereafter, Overton was taken inside the store, where he was advised of his rights in the presence of the clerks, and then directed to walk around the store as the robber had done. Neither clerk identified Overton as the armed robber. At trial, Broussard, one of the clerks, testified inaccurately that he identified items of clothing which the officers showed to him on the night of the robbery, before the officers asked him if he could identify Overton. From this testimony, the jury could have inferred that the clothing identification was reliable, since Broussard's identification of the clothing purportedly occurred approximately thirty minutes after the robbery. The record reflects, however, that Broussard testified falsely when he positively identified clothing at trial as the same clothing he had identified on the night of the robbery. In fact, Broussard did not identify this clothing, which he said the robber had worn, until a week later when he was asked to go to the police station for that express purpose. See, generally, McDaniel v. State, 523 So.2d 1225 (Fla. 2d DCA 1988).
The third ineffective assistance category is predicated on numerous instances of counsel's failure to object to allegedly improper and incorrect statements made by the prosecutor, and to allegedly improper conduct of state witnesses. It is an established principle that any comment reasonably susceptible of interpretation as a comment upon the defendant's right to remain silent, or which infers that a defendant has the burden of proving his innocence, is improper. See Trafficante v. State, 92 So.2d 811 (Fla. 1957); Dixon v. State, 430 So.2d 949 (Fla. 3d DCA 1983).
Overton also raises numerous instances of alleged prosecutorial misstatements of fact. One of these statements related to a claimed absence of fingerprints on the gun used in the robbery. Overton maintains that through discovery, counsel knew that fingerprints were found on the gun and that those prints were not Overton's. Since counsel failed to challenge the prosecutor's statement that no prints were found on the gun, the jury could have inferred there were no fingerprints because the robber wore gloves. Although the appealed order contains no express finding with regard to the fingerprint issue, the hearing transcript reflects the trial court's observation that these statements could have been significant in light of the glove issue as it developed at trial.[2]
In addition to the erroneous representation that no fingerprints were found on the gun used in the robbery, Overton lists numerous allegedly prejudicial statements which the prosecutor made throughout the trial, one of which could be interpreted as a reference to Overton's prior criminal record. For the most part, the trial court characterized these statements as fair comment on the evidence. Nevertheless, the hearing transcript reflects the trial court's concern regarding the reference to other crimes, terming this reference a mistake which ought not have been made.
*1388 Overton also excepts to the inaccurate characterization of his prior record which the prosecutor presented to the trial court at sentencing. At the evidentiary hearing, the trial court observed that consideration would have been given at sentencing to three of the enumerated factors, if the court had been apprised of these particular inaccuracies at sentencing.[3]
The final point raised under the category we have designated "failure to object," concerns counsel's failure to develop the objection she raised with regard to a report that state witnesses discussed their trial testimony with each other, in violation of the trial court's express instruction to the contrary. Counsel was permitted to pursue the matter, but failed to do so. The trial court found the witnesses' conversation improper and a violation of the rules, but held there had been no showing as to what had been said, therefore Overton failed to show that this improper conduct affected the outcome of the trial.[4]
A similar situation obtained in Ogden v. State, 494 So.2d 280 (Fla. 2d DCA 1986). In Ogden, defense counsel was advised that a juror was seen leaving the state attorney's office after she had been selected for Ogden's jury, but counsel did not pursue the matter or bring it to the court's attention after the state attorney said he knew of no connection between the juror and anyone in his office. The court held the failure of defense counsel to pursue possible juror improprieties "suggests deficient representation measurably below that of competent counsel likely to have affected the outcome of Ogden's trial." 494 So.2d at 282.
We commend the trial court's attempt to address each of the numerous allegations raised in Overton's motion for post-conviction relief. Nevertheless, we find that some significant points, most notably the fingerprint allegations, were not specifically addressed in the order. Therefore, we are unable to determine whether the trial court considered these allegations insignificant, or whether the allegations were overlooked. Given the reasonable inferences that would normally follow the allegations and testimony raised in Overton's motion, we find that he has made a prima facie showing of entitlement to post-conviction relief. Once that showing was made, it was incumbent upon the trial court to find that the burden shifted to the state to refute, if it could do so, the allegations which Overton has raised.
Therefore, this cause is reversed and remanded with directions to the trial court to require the state to go forward with the presentation of its case. On remand, the trial court should make a determination regarding the possibility that prejudice attached to counsel's failure to challenge the misleading statements made by the prosecutor with regard to fingerprint evidence. In addition, the trial court is directed to make a determination regarding the destruction of trial evidence while a motion was pending in the case. Finally, we suggest to the trial court that it consider addressing the amended motion on remand.
Accordingly, the order denying post-conviction relief is reversed and remanded, for further proceedings consistent with this opinion.
SMITH, C.J., and ZEHMER, J., concur.
JOANOS, J., concurs specially with opinion.
*1389 JOANOS, Judge, concurring specially.
I concur in the result accomplished by the majority opinion. I also would reverse and remand for continuation of the hearing that was discontinued when the trial judge granted what in effect was a motion for directed verdict by the State. The motion was made at the end of Overton's presentation of evidence and the ruling terminated the hearing before the State put on its case.
In reviewing the granting of a motion for directed verdict we are required to view the evidence in a manner most favorable to the defendant giving defendant the benefit of all favorable inferences. After doing that in this case, I would also find that the evidence so far presented under the circumstances of this case does make out a prima facie case of ineffective assistance of counsel. The burden of going forward has now shifted to the State. However, I do not believe that we should go any further in evaluating the merit of the evidence at this time. After the State has presented its case it will be up to the trial judge to evaluate all of the evidence.
NOTES
[1] The knit gloves introduced at trial were found in a shed close to the scene of the robbery. Affidavits filed in support of Overton's motion for post-conviction relief indicate that he was wearing leather gloves when this witness saw him on the day of the robbery.
[2] In analogous circumstances, the Fourth District found that appellant was entitled to a post-conviction evidentiary hearing on an ineffective assistance claim predicated on counsel's failure to alert the trial court to the fact that the "weapon" used in the robbery was a starter pistol rather than a firearm. Fox v. State, 510 So.2d 310 (Fla. 4th DCA 1986).
[3] The three unchallenged inaccuracies which the trial court found most troubling were (1) the fact that Overton had not effected an escape from prison as had been represented, but instead had escaped from a hospital before any charges had been filed against him; (2) the subsequent offenses were committed after the escape; and (3) the subsequent offenses were committed within a 4-day period.
[4] We agree with Overton that this finding places an impossible burden upon a defendant seeking relief on an ineffective assistance claim. Under this logic, a defendant must show counsel's performance was deficient, and that the deficient performance prejudiced the defense. Yet the very reason the defendant would be unable to show prejudice, would be due to counsel's failure to make the requisite showing on the record.